■ JOHN WILLIAMS, Doing Business as JOHN WILLIAMS PRODUCTIONS, Respondent, v AMERICAN HOME ASSURANCE COMPANY et al., Appellants. — Order, Supreme Court, New York County (N. C. Ryp, J.), entered March 30, 1983, granting renewal and reargument and adhering to denial of defendants' motion for summary judgment, is reversed, on the law, with costs, and defendants' motion for summary judgment dismissing the complaint is granted. Appeal from order, Supreme Court, New York County (N. C. Ryp, J.), entered July 2, 1982 is dismissed as superseded by order of March 30, 1983, without costs. Plaintiff does business as an individual proprietor under a trade name. The action is on floater insurance policies totaling $69,060. Plaintiff filed a proof of loss totaling $82,060 (at a time when plaintiff apparently thought the amount of the policies was $79,060). The amount of the policies had been increased by $30,485 about three and one-half weeks before the claimed loss on May 2, 1980. The circumstances of the loss as claimed by plaintiff are quite unusual: The insured property allegedly stolen consisted of

musical instruments and recording equipment which plaintiff alleged he had bought on four separate occasions during 1979 and 1980, all for cash, from different individuals whose addresses he did not know; that he stored some of the goods in an Atlanta storage locker for half a year and then removed them by a truck, which was then stolen and the contents removed; $43,485 of the stolen goods were alleged to have been purchased on the very day they were stolen. Plaintiff said that he had purchased the goods from persons who "would not remotely consider taking a check for such a transaction. Unfortunately, the names and addresses of the sellers, which were recorded, were lost from the front seat of my vehicle." The insurance policies contained the usual clauses requiring the insured to submit to an examination under oath, and to produce for examination "all writings, books of account, bills, invoices and other vouchers." Plaintiff appeared for examination but refused to provide some information. Later on advice of counsel he furnished further information. But although warned several times that failure to furnish pertinent information and documents might be a violation of the policies' requirements which would void his rights under the policies, plaintiff continued not to furnish certain items, at least until a court should rule on their propriety. The items which plaintiff had continued not to furnish were: (a) bank account records at three banks with which plaintiff did business for the period January 1, 1979 through May, 1980; (b) all his checkbooks and all other books and records maintained by the insured company; (c) checks in payment of taxes in connection with income tax returns for 1978 and 1979, which plaintiff had previously furnished; (d) details of plaintiff's previous arrests or convictions, plaintiff having answered "yes" to the question whether he had ever been arrested or convicted. In addition, defendants learned through an affidavit submitted by plaintiff in a related action in New Jersey that the document which had been furnished to defendants as a copy of plaintiff's 1979 income tax return was not the return as actually filed, but was a document prepared by plaintiff's accountant at plaintiff's request for submission to the insurance companies; plaintiff says that this document was prepared for the purpose of giving currently reliable information for that tax year bearing upon his claim and that he had anticipated filing an amended tax return, which he had not yet done as he was awaiting the determination of this loss claim for the subsequent year. The document originally furnished to defendants differed from the return as filed in showing $20,000 more of gross receipts and total income, and presumably net income. In the circumstances of this case, the relevance of plaintiff's bank accounts, books and records is not subject to argument. Obviously the insurance companies were entitled to know whether he really had the money to buy these large quantities of instruments and equipment for cash at the times that he did, and whether such purchases were consistent with his business. Similarly, the tax returns could cast light on this subject, and the checks in payment of the taxes would be evidence that indeed the tax returns were genuine. The failure to furnish this information was a breach of the policies. "[P]laintiff's willful refusal to answer relevant questions on his examination by defendants * * * was a breach of one of the substantial conditions of the policies." (*Hallas v North Riv. Ins. Co.,* 279 App Div 15, 16, affd 304 NY 671; accord *Dyno-Bite, Inc. v Travelers Cos.,* 80 AD2d 471, 473.) Such a breach defeats the claim on the policies quite apart from whether the furnishing of the "false" tax return comes within the provision that the policies shall be void in case of misrepresentation of any material fact or attempted fraud or false swearing. There have been cases in which the courts have given plaintiff another chance to answer the questions as a condition of denying summary judgment (see, e.g., *Pogo Holding Corp. v New York Prop. Ins. Underwriting Assn.,* 73 AD2d 605). But that has been done "in the perspective" of the

particular case. In the perspective of this case, we should not give plaintiff another chance to answer. Particularly in a case with such unusual circumstances, the insurance companies are "entitled to obtain, promptly and while the information is still fresh" (*Dyno-Bite, Inc. v Travelers Cos.*, 80 AD2d, at p 473), relevant information to enable them to decide upon their obligations and protect against false claims. To give them the information now, three and one-half years after the claimed loss, would be a material dilution of their rights. Further, "[t]he right to examine under the co-operation clause of the insurance policy * * * is much broader than the right of discovery under the CPLR." (*Supra,* at p 474.) Concur — Sullivan, Silverman, Bloom and Alexander, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I dissent and would affirm with respect to the order entered March 30, 1983. While the circumstances of this matter are strange, and the defendant is not to be faulted for making further inquiry and asking for the items which the plaintiff refused to supply, this court sets a dangerous precedent in making it obligatory for plaintiff to have supplied "(a) bank account records at three banks with which plaintiff did business for the period January 1, 1979 through May, 1980; (b) all his checkbooks and all other books and records maintained by the insured company; (c) checks in payment of taxes in connection with income tax returns for 1978 and 1979, which plaintiff had previously furnished; (d) details of plaintiff's previous arrests or convictions". While some or all of these items may possibly be relevant, they are not such that the failure to supply them is a violation of a requirement under the policy, and it is only now, after our court has ruled, that a duty is imposed on the plaintiff, which would mean that the plaintiff should be given another chance to answer the questions.