**In re U.S.A. ELECTRONICS, INC. Debtor.**

**U.S.A. ELECTRONICS, INC. and Paul Krohn as Trustee for U.S.A. Electronics, Inc., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY CO., Defendant.**

**Bankruptcy No. 187–70441–353. Adv. No. 189–0223–353.**

United States Bankruptcy Court, E.D. New York.

Nov. 2, 1990.

Thomas A. Bernstein, Weg & Meyers, P.C., New York City, for plaintiffs.

Stuart D. Markowitz, Feldman & Rudy, Roslyn Heights, N.Y., for defendant.

## DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS–MOTION FOR SUMMARY JUDGMENT

JEROME FELLER, Bankruptcy Judge.

Before the Court are two heatedly contested insurance claims of a Chapter 7 trustee arising out of separate alleged burglaries of the premises upon which the Debtor formerly conducted its retail consumer electronic business. The trustee commenced a lawsuit and has moved for partial summary judgment pursuant to Fed.R.Civ.P. 56, made applicable herein by Bankruptcy Rule 7056, seeking dismissal of all the affirmative defenses contained in the answer of the insurance carrier to his complaint. The carrier has filed a cross-motion for summary judgment seeking unconditional dismissal of the entire complaint based upon its sixth affirmative defense to count I of the complaint and its fifth affirmative defense to count II of the complaint. The carrier's cross-motion for summary judgment also seeks unconditional dismissal of count II based upon its sixth affirmative defense to count II of the complaint. The essential facts underlying these affirmative defenses are not genuinely disputed.

For the reasons hereinafter fully set forth, we grant the defendant-insurance company's cross-motion for summary judgment predicated upon the failure to cooperate with the carrier's investigation of the burglary claims and the failure to submit a sworn statement in proof of loss in respect of one of the burglary claims. The trustee's motion for partial summary judgment is denied.

## I. Background

U.S.A. Electronics, Inc. ("USA") filed a Chapter 11 petition for reorganization under Chapter 11 of the Bankruptcy Code on March 12, 1987. USA was engaged in the retail sale of consumer electronic merchandise in a store located at 83–13 Roosevelt Avenue, Jackson Heights, New York. The Chapter 11 petition reported inventory consisting of radios, appliances, cameras, watches and televisions valued at $50,000 and office equipment and supplies valued at $1,000. Byrland Despinosse[1] and Guy Germain are each 50% owners of USA, with Mr. Despinosse being secretary of the corporation and Mr. Germain its president. During all relevant periods, Mr. Despinosse was the more active participant in the operation of the business. Their efforts at USA, according to the Statement of Financial Affairs annexed to the Chapter 11 petition, earned Messrs. Despinosse and Germain $2,600 and $8,500, respectively, during the year immediately preceding inception of the Chapter 11 case.

On August 6, 1987, Aetna Casualty & Surety Company ("Aetna") issued to USA a business owners insurance policy, policy # 73–JQ–1258288–FCA. The term of the multi-peril policy was for one year and insured USA for, *inter alia*, property loss arising from burglary. USA was, at best, a marginal operation and it was abundantly clear that absent cash infusion from an extraordinary source, USA lacked the capacity of funding a plan of reorganization. Unable to obtain the cash infusion, USA's Chapter 11 rehabilitation effort aborted and the case was converted to one under Chapter 7 on January 13, 1989. Shortly thereafter, Paul I. Krohn was appointed trustee. He retained counsel in June 1989, the law firm of Weg and Meyers, P.C., to pursue two burglary insurance claims against Aetna that USA was unable to collect during the Chapter 11 phase of the bankruptcy case.[2] In December 1989, Mr. Krohn commenced this adversary proceeding to collect the two burglary claims; Aetna's answer was filed in February 1990.

## II. The Pleadings and Related Assertions

The complaint filed by the trustee against Aetna contains two counts. The first count ("Count I") alleges property loss by an occurrence of a covered peril during the term of the policy—a burglary—on or about December 19, 1987, as a result of which a property loss of $79,777 was incurred. The second count ("Count II") alleges a loss by another occurrence of a covered peril during the term of the policy—a second burglary—on or about May 15, 1988, as a result of which a property loss of about $22,000 was incurred.[3] Aetna's answer contains twelve affirmative defenses, six of which are interposed against Count I and six against Count II. Aetna's first five affirmative defenses to Count I all allege violations by USA of the policy's concealment and fraud provisions. Basically, these five affirmative defenses to Count I allege fraud in connection with and during Aetna's investigation of the December 1987 burglary claim. Aetna's sixth affirmative defense to Count I is based upon allegations that USA violated the cooperation clause of the insurance policy. Aetna's sixth affirmative defense to Count I is one of the two predicates upon which Aetna has filed the instant cross-motion to dismiss entirely the trustee's complaint.

Aetna's first four affirmative defenses to Count II all allege violations by USA of the policy's concealment and fraud provisions.

---

1. This is the name under which Mr. Despinosse signed the Chapter 11 petition on behalf of U.S.A. Elsewhere in the record of these proceedings, Mr. Despinosse identifies himself as Bernard Despinosse and sometimes as Berland Bernard Despinosse.

2. USA had hoped to confirm its Chapter 11 plan through monies collected on insurance claims.

3. On August 26, 1988, Aetna cancelled its insurance coverage for USA. On that same date, USA obtained insurance with All City Insurance Company. On or about August 29, 1988, just about three days later, a fire occurred at the store, as a result of which USA claims that $166,777.68 of inventory and $24,293.71 in furniture and fixtures were damaged or destroyed. Over an eight month period, USA made insurance claims for property losses totaling $292,848.39 arising out of alleged burglaries and fire.

Basically, these four affirmative defenses to Count II allege fraud in connection with and during Aetna's investigation of the May 1988 burglary claim. Aetna's fifth affirmative defense to Count II is based upon allegations that USA violated the cooperation clause of the insurance policy. This fifth affirmative defense to Count II is the second predicate upon which Aetna now cross moves to dismiss entirely the trustee's complaint. Aetna's sixth affirmative defense to Count II alleges that USA violated the policy in that it has failed to submit a sworn statement in proof of loss in respect of the May 1988 burglary claim. This sixth affirmative defense forms the basis of Aetna's motion to dismiss just Count II of the trustee's complaint.

Aetna's denials of the material allegations of the complaint and its first five affirmative defenses to Count I and first four affirmative defenses to Count II are driven by its belief that i) the two burglaries did not occur, or if they did occur, they did not occur as USA has described; and ii) even if the burglaries did occur, USA, through Messrs. Despinosse and Germain, fraudulently inflated and exaggerated the claims.

According to Aetna, the burglaries are highly suspicious for a number of reasons. Aetna, for example, makes reference to the admitted need of USA for cash infusions from extraordinary sources to confirm a plan of reorganization, the rather modest merchandise inventories reported by USA when it filed its Chapter 11 petition, Mr. Despinosse's portrayal of the alleged burglaries [4] and the results of an audit conducted by two certified public accountants on Aetna's behalf in connection with the December 1987 burglary claim.[5]

With this background and setting in mind, we now look at the terms of the

insurance policy, Aetna's efforts to obtain information during the course of its investigation of the burglary claims and the trustee's remarkable metamorphosis of Aetna's investigation into an investigation by the trustee of Aetna.

### III. *Relevant Provisions of the Insurance Policy*

The policy of insurance upon which the burglary claims are brought contains the following conditions at pages 5–6 thereof:

L. YOUR DUTIES AFTER LOSS OR IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

1. In the case of [property] loss under Section I, you must:

. . . .

e. prepare a detailed inventory of damaged business personal property showing quantity, description, actual cash value and amount of loss. You must attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory.

. . . .

g. submit to examination under oath.

h. submit to us, within 60 days after requested, a signed, sworn statement of loss that sets forth, to the best of your knowledge and belief:

(i) the time and cause of loss.

(ii) your interest and the interest of all others in the property involved and all encumbrances on the property.

(iii) other policies of insurance that may cover the loss.

(iv) changes in the title or occupancy of the property during the policy period.

---

**4.** Mr. Despinosse's version of the burglaries is interesting. He testified that the thief or thieves cut a hole in the store roof, worked their way down to the drop ceiling, removed or cut holes in some tiles comprising the drop ceiling, descended into the store, hoisted consumer electronic merchandise valued at around $100,000, exited in the same way as entry, and made a safe getaway. These activities by the alleged thief or thieves would have had to occur, ac-

cording to Mr. Despinosse, while the burglar alarm was ringing and the police presumably on the way.

**5.** The two certified public accountants concluded that the books and records of USA showed a loss of only $749.00 in inventories in connection with the December 1987 burglary claim.

(v) specifications of any damaged building and detailed estimates for repairs of the damage.

(vi) an inventory of damaged business personal property as described in e. above.

i. notify the proper authority if loss is due to violation of law.

## IV. *The Quest For Enlightenment*

On or about August 8, 1988, Aetna retained the law firm of Feldman & Rudy to represent it in connection with the December 1987 and May 1988 burglary claims of USA. By letter dated August 11, 1988, Stuart D. Markowitz, Esq., a member of the law firm of Feldman & Rudy, informed Mr. Despinosse of the necessity to furnish Aetna with a sworn statement in proof of loss regarding the December 1987 burglary within 60 days after receipt of the letter. Duplicate proof of loss forms in blank were enclosed. Mr. Despinosse turned over the letter and blank proof of loss forms to Harris D. Leinwand, Esq., USA's Chapter 11 counsel. On September 6, 1988, Mr. Markowitz received a letter, dated September 2, 1988 from Mr. Leinwand, advising that Mr. Leinwand is counsel for USA in its Chapter 11 case and forwarding a sworn statement in proof of loss signed by Mr. Despinosse regarding the December 1987 burglary claim. Mr. Despinosse stated under oath that as of December 19, 1987, USA had $146,590 worth of inventory and that $76,302 worth of inventory was stolen. Damages to fixtures and equipment in the sum of $3,475 is also asserted. The total claim thus aggregates $79,777.

After receiving USA's sworn statement in proof of loss in connection with the December 1987 burglary claim, Mr. Markowitz wrote a letter to Mr. Leinwand, dated September 12, 1988, informing Mr. Leinwand that USA was required to furnish a sworn statement in proof of loss regarding the May 1988 burglary within 60 days after receipt of that letter. Forms for that purpose, in duplicate, were enclosed.[6] The letter also informed Mr. Leinwand that, pursuant to the terms and conditions of the insurance policy, USA would be required to submit to examination under oath in respect of its burglary claims of December 19, 1987 and May 15, 1988. The letter of Mr. Markowitz dated September 12, 1988 was mailed on September 14, 1988, certified mail, return receipt requested, and received by Mr. Leinwand's office on September 15, 1988.[7] Subsequently, at the examination under oath of Mr. Despinosse conducted on October 21, 1988, in the presence of USA's then counsel—Mr. Leinwand, Mr. Markowitz reminded Mr. Despinosse of USA's obligation to submit the sworn statement in proof of loss regarding the May 1988 burglary claim. Sixty days elapsed after the receipt by Mr. Leinwand's office on September 15, 1988 of the September 12, 1988 letter. At no time within the sixty day period, or any time thereafter, has USA, or the trustee after conversion of the case to Chapter 7, furnished a sworn statement in proof of loss in connection with the May 15, 1988 burglary claim.

Aetna conducted examinations under oath of Mr. Despinosse on October 21, 1988 and November 14, 1988. Mr. Germain's examination under oath was conducted on November 14, 1988. Messrs. Despinosse

**6.** The September 12, 1988 letter expressly indicates such enclosures and Mr. Markowitz has sworn that he personally inserted two blank proof of loss forms in the envelope along with the letter. *See,* Affidavit of Stuart D. Markowitz, Esq., sworn to May 17, 1990, in support of Aetna's cross-motion for summary judgment and in opposition to trustee's motion for summary judgment, at p. 13, paragraph 30.

**7.** A copy of the September 12, 1988 letter, evidence of its mailing and receipt by Mr. Leinwand's office are attached to Aetna's cross-motion for summary judgment and opposition to the trustee's motion for partial summary judg-

ment as Exhibit G, H and I, respectively. Exhibit H is a copy of the white postal receipt card for certified mail, showing the mailing on September 14, 1988. Exhibit I is a copy of the green postal return receipt, showing delivery to Mr. Leinwand's office located at 230 Park Avenue, New York, New York, the following day. The year "1987" reflected on Exhibit I is patently impossible and obviously erroneous. The date per force must be *September 15, 1988* and not September 15, 1987, a date substantially prior to the two burglaries referred to in the letter.

and Germain were accompanied and represented at the examinations under oath by Mr. Leinwand, USA's Chapter 11 counsel. At each examination under oath, Mr. Markowitz, on behalf of Aetna, informed the witness and counsel as to procedures following completion of the examination. The transcript of each examination would be forwarded to counsel. The transcript was to be reviewed and changes made as appropriate. In addition, information not provided at the examination and documents requested at the examination were to be supplied and made part of the transcript. The corrected and completed transcript was to be then signed before a notary public and returned to Aetna.

By letter dated November 21, 1988, Mr. Markowitz forwarded to Mr. Leinwand the original and one copy of Mr. Despinosse's examination under oath taken on October 21, 1988. This letter listed in detail, by way of page reference to the transcript, the information and the documentation that was to be provided to Aetna. By letter dated December 8, 1988, Mr. Markowitz forwarded to Mr. Leinwand the original and one copy of each of Mr. Despinosse's and Mr. Germain's examinations under oath taken on November 14, 1988. This letter too listed in detail by way of page reference to the transcripts, the further information and the documentation that was to be provided to Aetna.[8] Both letters advised that the cooperation clause of USA's insurance policy is not fulfilled unless all the information and documentation called for during the examinations under oath were furnished and the transcripts properly executed, with the original thereof returned to Aetna.[9] At no time has USA, or the trustee after conversion of the case to Chapter 7, responded to the November 21, 1988 and December 8, 1988 letters of Aetna's counsel. Among other things, material and relevant information and docu-

mentation relating to substantiation of inventory or other losses were not supplied.

Upon conversion of the case in January 1989, the Chapter 7 trustee succeeded to USA's interest in the insurance claims. USA's insurance claims constituted virtually the entire Chapter 7 estate and it would appear that Mr. Krohn placed strong reliance on Mr. Despionsse's representations and the positions taken by USA as a debtor-in-possession in the Chapter 11 case. Having endured months of frustration in its investigation of what it believed might be suspicious burglary claims, the relationship between Mr. Krohn and Aetna's counsel became quite testy, even to the point where Mr. Markowitz refused to recognize Mr. Krohn's position as trustee. The trustee obtained an ex-parte order on May 24, 1989, authorizing an examination of Mr. Markowitz under Bankruptcy Rule 2004(a). On June 6, 1989, Mr. Krohn obtained authorization to retain counsel, Weg and Meyers, P.C., to pursue USA's insurance claims.

Beginning July 5, 1989, trustee's new counsel became very active. On that date, Weg and Meyers P.C., had a bankruptcy court subpoena issued to Aetna's counsel, Feldman & Rudy, by Stuart D. Markowitz, Esq. Aetna's counsel moved to quash the subpoena and on August 28, 1989, Aetna's counsel and trustee's counsel entered into a stipulation ("Stipulation") resolving the issues raised by Aetna's motion to quash. Under the Stipulation, Aetna's counsel agreed to produce significant quantities of documents, some broadly categorized, at the offices of trustee's counsel. Pursuant to the Stipulation, which was ultimately submitted to the Court and so ordered on September 22, 1989, Aetna's counsel was to provide, among other things, trustee's counsel with "[a]ll outstanding document and information requests made by the insurance companies or their agents or representatives to the insured or its agents or representatives". By letter dated August

---

8. For convenience, each of the three transcripts contains indices reflecting the information and documentation requested by Aetna and the pages of the transcript in which the request was made.

9. Copies of the November 21, 1988 and December 8, 1988 letters are attached to Aetna's cross-motion for summary judgment and opposition to the trustee's motion for partial summary judgment as Exhibits O and P, respectively.

30, 1989, two days after the Stipulation was entered into, Mr. Markowitz transmitted to trustee's counsel documents called for in the Stipulation. The document production was voluminous and each document produced was individually identified in the August 30, 1989 transmittal letter. Among the documents forwarded to trustee's counsel were copies of Mr. Markowitz's letters to Mr. Leinwand, dated November 21, 1988 and December 8, 1988, detailing the information and document requests made of Messrs. Despinosse and Germain at their examinations under oath. There ensued over the next three months a series of letters between Thomas A. Bernstein, Esq., an associate of Weg and Meyers, P.C., and Mr. Markowitz. The thrust of these letters consisted of Mr. Bernstein's complaints that Mr. Markowitz had not complied with the Stipulation and the answers of Mr. Markowitz thereto. Interestingly, a handwritten letter of Mr. Bernstein to Mr. Markowitz, dated September 8, 1989, contains the following:

> If there are any outstanding documentation requests from you [Aetna] to us, please advise us in writing and we will respond; otherwise we assume we are in full compliance.

Another letter of Mr. Bernstein to Mr. Markowitz, this one dated October 26, 1989, states that "we understand" as follows:

> U.S.A. Electronics Inc. has fully, completely and responsively complied with any and all requests from Aetna Casualty and Surety Co. pertaining to the burglary losses of December 12 [sic], 1987 and May 15, 1988 pursuant to the insurance contract.

## V. *Discussion*

Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, governs motions for summary judgment in the federal courts. The summary judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved. Thus, litigants need not wait until a case is fully tried, but may seek an adjudication by a motion under Rule 56. The purpose of the motion is to dispose of issues which can be decided upon established, admitted or ascertainable facts without a trial. The court must deny summary judgment where there is a genuine issue as to any material fact, i.e., a dispute over facts that might affect the outcome of the suit, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and grant it where there is no such issue and the movant is entitled to judgment as a matter of law. *Hamilton v. Smith,* 773 F.2d 461, 466 (2d Cir.1985). The Court's role is not to try issues of fact but to determine "whether there are issues to be tried." *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983) (*quoting, Heyman v. Commerce and Indus. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). The burden is on the party moving for summary judgment to show the lack of any material factual issue genuinely in dispute. When ruling on such a motion all ambiguities are resolved against the moving party. *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984). However, when one party moves for summary judgment and supports the motion with affidavits and exhibits, the opposing party cannot rest upon mere conclusory allegations, assertions or denials. Fed.R.Civ.P. 56(e).

### A. Failure to Cooperate

 Insurance policies covering the loss of property, regardless of the particular type of policy involved, typically contain provisions requiring an insured to cooperate with the insurer in the latter's investigation of the facts and circumstances relating to the claimed loss. The contractual duty to cooperate goes to the substance of the obligation of an insured and is accordingly a condition precedent to performance of the promise by the insurer to indemnify for loss. It is well established that a failure to cooperate by an insured in the investigation by the insurer constitutes a material breach of the insurance contract and is a defense to a suit on the policy. *Dyno–Bite, Inc. v. Travelers Companies,* 80

A.D.2d 471, 439 N.Y.S.2d 558 (4th Dep't.), *appeal dismissed,* 54 N.Y.2d 1027 (1981). *Accord, Averbuch v. Home Ins. Co.,* 114 A.D.2d 827, 494 N.Y.S.2d 738 (2d Dep't. 1985); *Williams v. American Home Assurance Co.,* 97 A.D.2d 707, 468 N.Y.S.2d 341 (1st Dep't.1983), *aff'd,* 62 N.Y.2d 953, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984); *Azeem v. Colonial Assurance Co.,* 96 A.D.2d 123, 468 N.Y.S.2d 248 (4th Dep't. 1983), *aff'd,* 62 N.Y.2d 951, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984); *Bulzomi v. New York Cent. Mut. Fire Ins. Co.,* 92 A.D.2d 878, 459 N.Y.S.2d 861 (2d Dep't.1983). New York law, which of course governs this lawsuit, strictly enforces an insurer's right to cooperation by its insured and summary judgment is granted by both the state and federal courts where the insured's failure to comply is not adequately explained or excused. *See, e.g., Williams v. American Home Assurance Co., supra.; Azeem v. Colonial Assurance Co., supra.; Bulzomi v. New York Cent. Mut. Fire Ins. Co., supra.; Do–Re–Knit, Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 491 F.Supp. 1334 (E.D.N.Y.1980).

■ USA's insurance policy contained a provision requiring it to submit to examination under oath, a customary cooperation clause of an insurance contract. The principals of USA did appear at such examinations in October and November 1988. However, those examinations were laced with informational and documentary gaps, all of which were requested to be disclosed and/or submitted to Aetna subsequent to the examinations. In sum, more than seventy (70) items of information or documentation were left open. These gaps were apparently not unanticipated. In that connection, an unopposed procedure or methodology was set forth by Aetna in the presence of USA's counsel at the outset of each of the examinations under oath. Such procedures included submission of affidavits, filling in blanks left in the transcripts, return of a corrected, completed transcript

signed and sworn to before a notary public and, of course, a turn over of documents. By letters, dated November 21, 1988 and December 8, 1988, Aetna again requested the information and documents requested at the examinations under oath and reminded USA of the cooperation clause.[10] Copies of these letters were received by trustee's counsel in early September 1989. The information and documentation sought is deemed relevant and material by Aetna to its investigation and nowhere in this record is that disputed by the trustee. Yet, the letters of November 21, 1988 and December 8, 1988 have never been answered or responded to by either USA or the trustee. Such continued failure of an insured to provide information and documents as requested by the insurer constitutes a material breach of the policy, precluding recovery by the insured. This is hardly a case in which it could be found that the insured's failure to cooperate implicated technical or unimportant omissions, but that the insured otherwise substantially performed its obligation to cooperate. Accordingly, the trustee's complaint should be dismissed based upon Aetna's sixth affirmative defense to Count I and fifth affirmative defense to Count II of the complaint.

■ The burden of proof is on the insurer to demonstrate breach of a cooperation clause, but where, as here, a lack of cooperation is exposed, the burden is then upon the insured to show an excuse for such conduct. The trustee here has suggested a variety of reasons ostensibly to explain or excuse the failure to cooperate. None of them have any merit and are insufficient to raise triable issues of fact.

First, trustee's counsel contends that Aetna has failed to disclose adequately the requested information and documentation which USA failed to furnish. The short answer to this argument is contained in Aetna's letters of November 21, 1988 and December 8, 1988 letters transmitting the

---

**10.** Mr. Despinosse has filed an affidavit, sworn to June 4, 1990, stating USA never received these letters. Apart from possible issues of truthfulness, this affidavit is highly misleading and, in any event irrelevant. These letters were addressed and properly sent to USA's *counsel* in the superseded Chapter 11 case, Harris D. Leinwand, Esq. Receipt of the letters by Mr. Leinwand and thereafter by trustee's counsel is not denied.

transcripts of the examinations under oath. These letters and transcripts, read together, are most specific in itemizing, enumerating and describing the information and documents requested. USA and thereafter the trustee were duty bound to follow the directions and instructions of these letters. Nowhere in this record has trustee's counsel made any effort to explain USA's failure to do so in the Chapter 11 case. Nor has trustee's counsel explained satisfactorily the failure to do so in the superseding Chapter 7 case.[11]

Second, trustee's counsel makes a sort of waiver/estoppel argument in a futile effort to vitiate Aetna's failure to cooperate affirmative defenses. This argument is predicated on his assertions that Aetna failed to comply with the Stipulation and also as a consequence of the related correspondence between himself and Aetna's counsel during the September–November 1989 period. This contention is little more than a smoke screen. As indicated, Aetna promptly complied with the Stipulation in a substantial way. In any event, close analysis of the ensuing correspondence discloses that in significant part such correspondence did not even deal with the burglary claims but related to a separate USA fire insurance claim against All City Insurance Company.[12] Significantly, at no time prior to this lawsuit did the trustee assert before this Court lack of compliance with the Stipulation. The self-serving statements contained in the letters of trustee's counsel, dated September 8, 1989 and October 26, 1989, designed to establish compliance with the insurance contract by USA despite overwhelming facts to the contrary, are surely not valid bases for a legitimate waiver/estoppel argument.

Trustee's counsel also asserts that USA has no obligation to cooperate because Aetna repudiated the insurance policy, thereby discharging the insured's contractual obligations. The alleged repudiation is grounded on "demands" of Aetna claimed by trustee's counsel to be outside the scope of the insurance policy. Trustee's counsel stoutly proclaims that the policy merely required USA to submit to examination under oath, but did not authorize Aetna's requests for affidavits, production of documents and the execution before a notary public of corrected and completed transcripts. Trustee's counsel is wrong; common sense and the law dictate otherwise. The information and document requests, as well as the procedure for final execution of the examination transcripts were integral to the examinations under oath. Absent compliance with these requirements, the examinations under oath of USA's principals were incomplete and virtually useless. Attendance at an examination under oath, without full, prompt and frank assistance to discover facts and circumstances surrounding the loss, is not sufficient. It is well established that an insured not only has a duty, under the cooperation clause of an insurance policy, to appear for and submit to examination under oath, but also to answer all relevant and material questions under oath and to supply all relevant and material information and documents to the insurer. *See, e.g., Cabe v. Aetna Casualty & Surety Co.*, 153 A.D.2d 653, 544 N.Y.S.2d 862 (2d Dep't.1989); *Pizzirusso v. Allstate Ins. Co.*, 143 A.D.2d 340, 532 N.Y.S.2d 309 (2d Dep't.), *appeal dismissed,* 73 N.Y.2d 808, 537 N.Y.S.2d 478, 534 N.E.2d 316 (1988); *Averbuch v. Home Insurance Co., supra,*

---

**11.** Trustee's counsel admits that he reviewed the transcripts "very quickly". Transcript of June 5, 1990 hearing at page 6. Counsel's characterization of Aetna's August 30, 1989 transmittal of voluminous documents, including the November 21, 1988 and December 8, 1988 letters of Aetna, as "jumbled, disorderly and confusing" is not a cognizable excuse for non-compliance. Affirmation of Thomas A. Bernstein, Esq., executed April 5, 1990 at paragraph 27, page 7. If anything, this statement reflects an unwillingness, or maybe laziness, on the part of counsel

to review the very extensive documents he requested of Aetna. Trustee's counsel appears to evince a recurring pattern of experiencing great difficulties in reviewing the voluminous documents he requests of Aetna. *See,* Affirmation of Thomas A. Bernstein, Esq., executed April 5, 1990, at paragraph 41, page 11.

**12.** All City Insurance Company is represented by Feldman & Rudy, the same law firm is representing Aetna in the burglary claims. *See,* footnote 3, *supra.*

494 N.Y.S.2d 738; *Williams v. American Home Assurance Co., supra,* 468 N.Y.S.2d 341.

### B. Failure To Submit Sworn Statement In Proof of Loss

■ Insurance policies covering the loss of property, regardless of the particular type involved, characteristically contain provisions requiring the insured to file sworn proofs of loss containing specific information in respect of the loss within a specified time. The submission of proofs of loss in accordance with the provisions of the policy is a condition precedent to recovery. 5A Appleman, Insurance Law and Practice, § 3481 at 429–31. Typically, in New York the time for the submission of proofs of loss is within sixty days after demand by the insurer. It is well established that the failure to file sworn proofs of loss within sixty days of the demand therefor constitutes an absolute defense to an action on the insurance policy, absent a waiver of the requirement by the insurer or conduct on its part estopping its assertion of the defense. *Marino Constr. Corp. v. INA Underwriters Ins. Co.,* 69 N.Y.2d 798, 513 N.Y.S.2d 379, 505 N.E.2d 944 (1987); *Igbara Realty Corp. v. New York Prop. Underwriting Ass'n.,* 63 N.Y.2d 201, 481 N.Y.S.2d 60, 470 N.E.2d 858 (1984); *Maleh v. New York Prop. Ins. Underwriting Ass'n.,* 64 N.Y.2d 613, 485 N.Y.S.2d 32, 474 N.E.2d 240 (1984); *Brostowin v. Hanover Ins. Co.,* 154 A.D.2d 418, 546 N.Y.S.2d 4 (2d Dep't.1989); *Aryeh v. Westchester Fire Ins. Co.,* 138 A.D.2d 337, 525 N.Y.S.2d 628 (2d Dep't.), *appeal denied,* 73 N.Y.2d 703, 537 N.Y.S.2d 491, 534 N.E.2d 329 (1988).

■ USA's insurance policy contained provisions requiring it to furnish Aetna, within sixty days after requested, a sworn statement of loss setting forth certain specific information. To trigger the sixty day time period, Aetna was required to give written notice and a blank proof of loss form. N.Y.Ins.Law § 3407(a) (McKinney's 1985). As indicated above, by letter of Aetna's counsel to USA's counsel dated September 12, 1988, Aetna requested sub-

mission of a sworn proof of loss in respect of the May 15, 1988 burglary and enclosed therewith blank proof of loss forms in duplicate. The letter was mailed on September 14, 1988 and receipt thereof was acknowledged by the office of USA's counsel on September 15, 1988. The proof of loss was thus required to be submitted on or about November 14, 1988. It is undisputed that a sworn statement in proof of loss has never been furnished Aetna in connection with the May 15, 1988 burglary claim.

Since the failure to file a sworn proof of loss within sixty days of demand is an absolute defense to a suit on an insurance policy, and since concededly neither USA or the trustee, as successor to USA, ever filed a sworn proof of loss regarding the May 15, 1988 burglary claim, Aetna is entitled to summary judgment dismissing Count II of the trustee's complaint, unless there is a genuine issue of fact as to whether that requirement has been waived or Aetna should be estopped from asserting the defense. Because there is no evidence of waiver by Aetna or conduct on Aetna's part which would excuse compliance with its demand for a sworn proof of loss regarding the May 15, 1988 burglary, the trustee's claim related to that burglary is barred as a matter of law. Accordingly, Count II of the trustee's complaint should be dismissed based upon Aetna's sixth affirmative defense thereto.

Trustee's counsel throws up an assortment of meritless petty arguments in a desperate effort to sustain Count II of the complaint. For example, he asserts that there is no proof that the September 12, 1988 letter was received by USA's then counsel, Harris D. Leinwand, Esq., because the signature on the postal receipt does not purport to be the personal signature of Mr. Leinwand. He ignores, however, the fact that the postal receipt was signed by an agent of Mr. Leinwand at the latter's law offices. He then proceeds to argue that the signature on the postal receipt purports to be "9/15/87." Surely, trustee's counsel must have known that the year 1987 was an obvious error and per force should have read "9/15/88". *See,* footnote 7, *supra.* This is not all. Trustee's counsel argues

that Aetna's September 12, 1988 request for a proof of loss was invalid under Insurance Law § 3407(a) in that the letter failed to enclose the required blank proof of loss form. *See,* Reply Affirmation of Thomas A. Bernstein, Esq., executed on June 1, 1990, paragraph 54, page 14. On what basis, trustee's counsel makes this statement is not clear, particularly since Aetna's counsel swears that he personally inserted two blank proof of loss forms in the envelope along with his September 12, 1988 letter. *See,* footnote 6, *supra.*

The centerpiece of the trustee's attempts to salvage Count II of the complaint is an affidavit of Mr. Despinosse, sworn to June 4, 1990, and annexed to Mr. Bernstein's reply affirmation. This affidavit denies receipt by USA of the September 12, 1988 letter. Apart from questions of truthfulness,[13] this affidavit is highly misleading and, in any event, irrelevant. The letter was sent by Aetna's counsel to USA's then counsel Harris D. Leinwand, Esq., who has never denied receipt of the September 12, 1988 letter. Less than a month earlier, on August 11, 1988, Aetna's counsel wrote directly to Mr. Despinosse, enclosing blank proof of loss forms and requesting submission of a proof of loss regarding the December 1987 burglary claim. Aetna's counsel, on September 6, 1988, received a letter from Mr. Leinwand advising that he is USA's counsel, which letter forwarded a sworn statement in proof of loss signed by Mr. Despinosse in connection with the December 1987 burglary. It is no small wonder that on September 12, Aetna's counsel wrote to counsel and not to Mr. Despinosse.

### C. Trustee's Request For More Time

In the alternative, the trustee urges that if the Court was inclined to recognize the affirmative defenses upon which Aetna seeks summary judgment, the Court should grant further time for compliance with the

insurance policy and so condition any dismissal order. The trustee's request is denied.

The purpose of a cooperation clause is to enable an insurer to obtain all knowledge and facts concerning an insured event and the loss involved while the information is fresh, in order to protect itself from fraudulent and false claims. *Hudson Tire Mart, Inc. v. Aetna Casualty and Surety Co.,* 518 F.2d 671, 674 (2d Cir.1975); *Williams v. American Home Assurance Co., supra.,* 468 N.Y.S.2d 341, 343. *See, Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94–95, 28 L.Ed. 76 (1884). Proof of loss provisions serve a similar purpose of facilitating an insurer's investigation of a claim and have been strictly construed by New York courts for a century. *Igbara Realty Corp. v. New York Property Insurance Underwriting Association, supra.,* 481 N.Y.S.2d 60, 64, 470 N.E.2d 858, 862–63; *Peabody v. Satterlee,* 166 N.Y. 174, 59 N.E. 818 (1901) (Complaint of insured dismissed where proof of loss was not received by the insurer until sixty-first day after the fire, one day too late).

USA and its successor in interest, the trustee, have failed to supply Aetna with information, documentation, completed transcripts of the examinations under oath of Messrs Despinosse and Germain and a sworn statement in proof of loss, since the fall of 1988. No reasonable excuse for such protracted non-compliance with the insurance policy has been proferred. As the court in *Dyno–Bite, Inc. v. Travelers Companies, supra.,* 439 N.Y.S.2d 558, 560–561, observed:

> By its terms the insured promises to render *full and prompt* assistance to discover the facts surrounding the loss and anything less results in a breach of contract. [Emphasis Added].

To give them more time now, two years after compliance due, would be a material and accordingly impermissible dilution of

---

**13.** Prior to commencing the examination under oath of Mr. Despinosse on October 21, 1988, Aetna's counsel reminded Mr. Despinosse, in the presence of Mr. Leinwand, that USA was required to submit a sworn statement in proof of loss regarding the May 15, 1988 burglary claim

as per the September 12, 1988 letter. *See,* Exhibit K to Aetna's cross-motion for summary judgment and opposition to trustee's motion for partial summary judgment. No protestations or lack of familiarity with the letter was voiced by either Mr. Despinosse or Mr. Leinwand.

Aetna's rights. Aetna's cross-motion is therefore granted unconditionally.[14]

### VI. *Conclusion*

Based on all of the foregoing, having carefully reviewed the record and upon application of relevant principles of law, the Court is satisfied that no genuine issue as to material fact exists as to Aetna's sixth affirmative defense to Count I and Aetna's fifth affirmative defense to Court II, and holds that Aetna is entitled to judgment as a matter of law. Aetna's cross-motion for summary judgment dismissing the trustee's entire complaint is granted unconditionally.

Similarly, the Court is satisfied that no genuine issue as to material fact exists as to Aetna's sixth affirmative defense to Count II, and holds, for separate and independent reasons, that Aetna is entitled to judgment as a matter of law on Count II. Assuming the trustee's entire complaint would not be dismissed, Aetna's cross-motion for summary judgment dismissing Count II would be granted unconditionally.

The trustee's motion for partial summary judgment seeking dismissal of all of Aetna's affirmative defenses is denied.

A SEPARATE ORDER SHALL ISSUE IN CONFORMITY HEREIN.

---

**14.** The trustee makes numerous other arguments, some cryptic, in his effort to forestall or defeat Aetna's cross-motion for summary judgment, none of which warrant further discussion. Suffice it to say that we have given them all careful consideration and find them utterly void of merit or incoherent. In light of our decision to grant Aetna's cross-motion and the resultant dismissal of the trustee's complaint, the trustee's motion for partial summary judgment is, as a practical matter, mooted. Nonetheless, in the interest of completeness, we also dispose of the trustee's motion. The trustee's motion for partial summary judgment seeks to strike all of Aetna's affirmative defenses. To the extent the trustee's motion encompasses the affirmative defenses upon which Aetna's cross motion is granted, the trustee's corresponding motion for partial summary judgment is denied. The remaining portion of the trustee's motion is directed toward Aetna's fraud and concealment affirmative defenses and must also be denied. The trustee discloses no basis for dismissal of these affirmative defenses which are pregnant with genuine, triable issues of material fact such as, for example, the nature, extent and value of property taken in the course of the alleged burglaries.